UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAY S. KRAVITZ,

                              Plaintiff,

          v.

ANTHONY ANNUCCI, *et al.*,

                              Defendants.

No. 16-CV-8999 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Jay S. Kravitz
Earlton, NY
*Pro Se Plaintiff*

Barbara K. Hathaway, Esq.
Bradley G. Wilson, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Jay S. Kravitz ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983,

against Anthony Annucci ("Annucci"), Commissioner of the New York State Department of

Corrections and Community Supervision ("DOCCS"), as well as several employees of DOCCS

working at Fishkill Correctional Facility ("Fishkill") (collectively, "Defendants").[1]  Plaintiff

alleges that Defendants prevented him from observing the Jewish holiday of Shavuot, in

violation of his rights under the First, Eighth, and Fourteenth Amendments, as well as his rights

under Article 1 of the New York Constitution.  (*See* Second Am. Compl. ("SAC") (Dkt. No.

---

[1] The Fishkill Defendants are: S. Purcell ("Purcell"), A. Baker ("Baker"), L. Andreu
("Andreu"), D. McCray ("McCray"), G. St. Victor ("St. Victor"), D. McMahon ("McMahon"),
Officer Waseiler ("Waseiler"), and Sgt. Zupan ("Zupan").

45).)  Before the Court is Defendants' Motion To Dismiss.  (Not. of Mot. (Dkt. No. 55).)  For the following reasons, the Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint and are taken as true for the purpose of resolving the instant Motion.

In June 2014, Plaintiff was incarcerated at Fishkill.  (SAC ¶¶ 12, 14.)  Upon arrival, Plaintiff told prison officials that he was Jewish, that he "wished to observe the faith while incarcerated," and that he "wished to observe the upcoming Jewish holiday of" Shavuot, (*id.* ¶ 14), which is "one of the three major festivals in the Jewish calendar," (*id.* ¶ 15).  Plaintiff's "name was added to the list of inmates who would be observing" Shavuot at Fishkill.  (*Id.* ¶ 14.)

On June 3, 2014, the first night of Shavuot, Plaintiff and other Jewish inmates were brought "to a staging area to arrange for their [Shavuot] prayers and holiday dinner."  (*Id.* ¶ 16.)  Defendants Purcell, Baker, Andreu, McCray, and St. Victor were present.  (*Id.*)  These Defendants "tossed . . . peanut butter sandwiches in brown bags" to Plaintiff and the other inmates and "informed them that this was their kosher meals."  (*Id.* ¶ 17.)  Further, these Defendants stated that Plaintiff and the other inmates "would not be able to congregate as a group for prayers" and "that they would not observe [Shavuot] that night."  (*Id.*)

Following this incident, Plaintiff "immediately" wrote letters to various supervisory officials at Fishkill.  (*Id.* ¶ 18.)  The Fishkill chaplain thereafter came to see Plaintiff and "assured" him that he would be permitted to observe the second night of Shavuot.  (*Id.*)

On June 4, 2014, the second night of Shavuot, Plaintiff and other Jewish inmates were escorted by Defendants McMahon, Wasweiler, and Zupan — none of whom was present on the

first night — to the "auxiliary dining hall," where they were "provided kosher meals." (*Id.* ¶ 19.)

Plaintiff "then began to lead the group in Jewish prayers." (*Id.*) However, "at the inception of

the prayers," these Defendants "abruptly interrupted the prayers and commanded them to stop,"

telling the inmates that they "'didn't have time for their prayers' because they had 'things to

do,'" and, "'just hurry up, eat and let's go!'" (*Id.*) In sum, these Defendants forbade Plaintiff

and the other inmates "any further religious observance." (*Id.*)

Plaintiff brings seven causes of action. In his first cause of action, Plaintiff alleges that

Defendants violated his First Amendment right to freely exercise his religion. (*Id.* ¶¶ 23–27.) In

his second cause of action, Plaintiff alleges that Defendants violated his Eighth Amendment right

not to be subject to cruel and unusual punishment. (*Id.* ¶¶ 28–32.) In his third cause of action,

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to due process. (*Id.*

¶¶ 33–37.) In his fourth, fifth, and sixth causes of action, Plaintiff alleges that Defendants

violated the New York Constitution's analogous guarantees of freedom of religion, freedom

from cruel and unusual punishment, and due process. (*Id.* ¶¶ 38–51.) And in his seventh cause

of action, Plaintiff brings a *Monell* claim against Defendant Annucci. (*Id.* ¶¶ 52–60.)

B. Procedural Background

Plaintiff filed his initial Complaint on November 18, 2016. (Dkt. No. 2.) On November

21, 2016, the Court granted Plaintiff's application to proceed in forma pauperis. (Dkt. No. 3.)

Plaintiff filed a First Amended Complaint on May 10, 2017. (Dkt. No. 17.) Plaintiff filed the

instant Second Amended Complaint on February 27, 2018. (Dkt. No. 45.)

On March 9, 2018, Defendants filed a letter seeking a pre-motion conference in

anticipation of moving to dismiss. (Dkt. No. 48.) The Court thereafter set a briefing schedule.

(Dkt. No. 49.) On April 30, 2018, Defendants filed the instant Motion To Dismiss and

accompanying papers.  (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No.

56).)  Plaintiff filed his opposition on May 31, 2018.  (Pl.'s Mem. of Law in Opp'n to Defs.'

Mot. ("Pl.'s Mem.") (Dkt. No. 58).)  On June 15, 2018, Defendants filed a reply.  (Defs.' Reply

Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 59).)

## II.  Discussion

Defendants move to dismiss the Second Amended Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6).  Defendants argue that they are entitled to qualified immunity on

Plaintiff's First Amendment claim, that Plaintiff fails to state an Eighth or Fourteenth

Amendment claim, that Plaintiff fails to state a *Monell* claim, and that Plaintiff's state-law claims

are barred.  (Defs.' Mem. 4–13.)

### A.  Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations, alterations, and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (quotation marks and alteration omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601,

605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

B.  Analysis

1.  Free Exercise Claim

Plaintiff's first cause of action alleges that Defendants violated his First Amendment rights by twice preventing him from observing the Jewish holiday of Shavuot with other Jewish inmates at Fishkill.  (SAC ¶¶ 23–27.)

To state a free exercise claim, an inmate "must make a threshold showing that 'the disputed conduct substantially burdened his sincerely held religious beliefs.'"  *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration omitted) (quoting *Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013)); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citation omitted) (same).  To show a belief is "sincere," the inmate "need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious."  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citations, alterations, and quotation marks omitted).  "[A] substantial burden exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (citation, alteration, and quotation marks omitted); *see also Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) (citation and quotation marks omitted) (same).  "While mere inconvenience to the adherent is insufficient to establish a substantial burden, demonstrating a substantial burden is not an onerous task for the plaintiff."  *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (citations, alterations, and quotation marks omitted).  Once the inmate satisfies this burden, the defendant then "bear[s] the relatively limited burden of identifying the

legitimate penological interests that justify the impinging conduct," although "the burden remains with the [inmate] to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (citation, alteration, and quotation marks omitted).

There is no dispute at this stage that Plaintiff's religious beliefs are sincerely held. The sole question, then, is whether Defendants substantially burdened Plaintiff's religious observance. Plaintiff alleges that Defendants twice prevented him from observing communal Shavuot services. (SAC ¶¶ 16–17, 19, 23–27.) "In the Second Circuit, courts have held that preclusion from attending two religious services is not, without more, a 'substantial burden' on a plaintiff's free exercise of religion." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 588 (S.D.N.Y. 2015) (citation omitted); *see also Jean-Laurent v. Los*, No. 12-CV-132, 2015 WL 1015383, at *6 (W.D.N.Y. Mar. 9, 2015) (same). However, where an inmate's "participation in the [religious service], in particular, is considered *central or important* to [the inmate's] practice of [his religion]," a substantial burden may exist. *Ford*, 352 F.3d at 593–94 (emphasis added).

Defendants argue that the Second Amended Complaint does not sufficiently allege that Shavuot "is so central or important that denying attendance at it represents a *per se* substantial burden under existing case law." (Defs.' Mem. 11.)[2] In support, Defendants rely principally on

---

[2] Defendants frame this argument in terms of qualified immunity, arguing that "Plaintiff has not stated a violation of a clearly established right because no court has held that general allegations like those in the Second Amended Complaint suffice to have placed the statutory or constitutional question beyond debate." (Defs.' Mem. 12 (citation and quotation marks omitted); *see also* Defs.' Reply 5 (arguing that Defendants "are entitled . . . to qualified immunity[] because no [c]ourt has held that allegations of a holiday's importance at this low level of detail establish a substantial burden on religious exercise"). The Court reads this contention as an argument *on the merits* that Plaintiff does not plead sufficient facts to come within *Ford*. Indeed, the "relevant question" on the question of substantial burden — namely, "whether participation in the [religious observance], in particular, is considered central or important to [the inmate's] practice of [his faith]" — is, as Defendants appear to acknowledge, clearly established by the Second Circuit. *See Ford*, 352 F.3d at 593–94.

*Lombardo v. Freebern*, No. 16-CV-7146, 2018 WL 1627274, at *12 (S.D.N.Y. Mar. 30, 2018) (citation omitted), for the proposition that a plaintiff may establish the centrality of a particular religious observance to his faith only by alleging detailed facts. (Defs.' Mem. 11–12.) This reliance is misplaced. In *Lombardo*, the plaintiff's entire allegation on the question of centrality was that "'Passover is the pinnacle of the reason Jews exist today,' akin to the 'Super Bowl' of religious services." *Lombardo*, 2018 WL 1627274, at *12. The Court held that allegation sufficient to "allege[] that Passover was 'central or important to' his faith such that missing even one service could constitute a substantial burden." *Id.* (quoting *Ford*, 352 F.3d at 593–94).

Plaintiff's allegations here are not meaningfully different from those in *Lombardo*. Plaintiff alleges that, upon arrival at Fishkill, he told officers "that he practiced the Jewish faith and wished to observe the faith while incarcerated," and that he showed the officers his "Jewish ritual objects that he had brought with him," namely, his prayer shawl and phylacteries. (SAC ¶ 14.) Plaintiff further alleges that he stated to those officers that he wished to observe Shavuot and, as a result, had his name added to Fishkill's list of inmates observing Shavuot. (*Id.*) And, most importantly, Plaintiff explicitly alleges that Shavuot is "one of the three major festivals in the Jewish calendar." (*Id.* ¶ 15.) That Plaintiff does not further describe Shavuot or provide a colorful description of its importance, as did the plaintiff in *Lombardo*, does not detract from the conclusion that Plaintiff has plausibly alleged that observing Shavuot was central or important to the sincere exercise of his faith. To be sure, in several cases in which courts have found a religious service to be central to an inmate's faith the complaints contained somewhat more detailed allegations than those present here. *See, e.g.*, *Williams v. Does*, 639 F. App'x 55, 57 (2d Cir. 2016) (concluding that the plaintiff stated "a plausible free exercise claim" where he "alleged that the premature sunset meals forced him to either forgo his meal or break his fast,"

and further "characterized fasting for Ramadan as important to his practice of Islam" because "eating before sunset was a 'grave spiritual sin' that canceled the 'validity' of fasting" (citation omitted)); *Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at *14 (S.D.N.Y. Feb. 14, 2018) (holding the plaintiff sufficiently stated centrality where he alleged "that both Ghadir Khum and Muharram/Ashura 'are an integral part of the Shia faith'" and that those holidays "'require that a faithful adherent fast . . . and then break his/her fast with congregational prayer then by eating halal foods'" (alterations omitted)); *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *9 (S.D.N.Y. Sept. 7, 2017) (holding the plaintiff sufficiently stated centrality where he repeatedly described the events as "Holy Days" and alleged the holidays were "unique to Shi'ism" (citation omitted)). Yet, none of these cases states that a plaintiff must offer detailed factual allegations describing the centrality of the religious observance at issue to his faith. To the contrary, the Second Circuit has explicitly cautioned that, "[a]lways present is the danger that courts will make conclusory judgments about the unimportance of the religious practice to the adherent rather than confront the often more difficult inquiries into sincerity, religiosity and the sufficiency of the penological interest asserted to justify the burden." *Ford*, 352 F.3d at 593. Moreover, the Supreme Court has stated that "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Vazquez v. Maccone*, No. 12-CV-4564, 2016 WL 2636256, at *8 (E.D.N.Y. May 6, 2016) ("Although courts are not encouraged to sit in judgment of which religious beliefs are important, there will be cases in which it comfortably could be said that a belief or practice is so peripheral to the plaintiff's religion that any burden can be aptly characterized as constitutionally de minimis." (quotation marks omitted) (citing *Hernandez* and *Ford*)); *Singh*, 520 F. Supp. 2d at

499 ("[T]his Court does not accept [the] defendants' . . . invitation to judge the centrality of [the] plaintiff's religious practices to his faith." (citing *Hernandez*)).

Given these instructions, the Court concludes that, construed liberally and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has sufficiently alleged Shavuot's centrality. This is not a case in which Plaintiff has failed entirely to allege facts suggesting centrality or importance. *See, e.g.*, *Johnson v. Paul*, No. 17-CV-3654, 2018 WL 2305657, at *6 (S.D.N.Y. May 21, 2018) (holding centrality not established where the complaint "provides no details whatsoever about the missed meal(s) or service(s), such that the Court could reasonably infer they were in turn important to — let alone necessary for — the observance of" the holiday); *Lopez*, 136 F. Supp. 3d at 588 (holding centrality not established where the plaintiff "only claim[ed] that she missed two religious services . . . and [did] not allege that the specific services were central or important to her faith" (citations, alterations, and quotation marks omitted)). Rather, the Second Amended Complaint squarely alleges that Shavuot is "one of the three major festivals in the Jewish calendar." (SAC ¶ 14.) Moreover, the additional allegations that Fishkill maintained a list of Jewish inmates scheduled to observe Shavuot, (*id.*), that Plaintiff "immediately" wrote to Fishkill's supervisory officials upon being denied observance of the first night of Shavuot, and that Fishkill's chaplain thereafter "assured [Plaintiff] that on the second night of the holiday he would be permitted his religious observance," (*id.* ¶ 18), together can be read to suggest that both Plaintiff and Fishkill treated Shavuot as an important Jewish holiday the denial of which was not "constitutionally de minimis." *Ford*, 352 F.3d at 593; *see also Perez v. Frank*, No. 04-CV-1062, 2008 WL 859716, at *9 (E.D. Wis. Mar. 28, 2008) ("Not only was it established that 'Eid-ul-Fitr was a very significant date on the Islamic calendar, but defendants apparently knew that it was a significant holiday." (citing *Ford*)). Accordingly, Plaintiff has

satisfied his burden of alleging that Shavuot is "central or important" to the exercise of his faith such that missing even one service could constitute a substantial burden. *Ford*, 352 F.3d at 593–94.

Defendants argue that, in any event, they are entitled to qualified immunity. (Defs.' Mem. 10–13.) "Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (citation and quotation marks omitted). In determining whether a right is clearly established, the "inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (citation and quotation marks omitted). "In the Second Circuit, 'a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.'" *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 702 (S.D.N.Y. 2011) (quoting *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004)). Put differently, a right is "'clearly established' if the [Supreme Court or Second Circuit's] decisions 'clearly foreshadow' a particular ruling on the issue." *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997) (citation omitted).

Defendants argue that, even assuming the centrality of Shavuot, "it is not clearly established that an inmate's free exercise right is violated when each [D]efendant denied him *part* of the observance at *one half* of a two-night celebration that is only *one of* the important holidays of a religious faith." (Defs.' Mem. 13 (emphasis in original).) In support, Defendants analogize to *Hamilton v. Countant*, No. 13-CV-669, 2016 WL 881126 (S.D.N.Y. Mar. 1, 2016).

There, prison officials allegedly "refused to provide [the inmate with] the cornbread and grape juice required for him to take communion during [the] Rastafarian holiday" of Fasika. *Id.* at *1–2. The court concluded that the inmate was not substantially burdened by the officials' alleged conduct "because communion makes up only one aspect of the day-long Fasika celebration" and because the inmate was otherwise permitted his religious observance. *Id.* at *7. In so concluding, the court distinguished the case from that of *Ford*: "[W]here the prisoner [in *Ford*] was wholly prevented from observing the holiday in its entirety, [the inmate] here participated in every aspect of Fasika bar communion." *Id.* (citing *Ford*, 352 F.3d at 594 n.6). Put differently, the court held:

> The absence of the Fasika communion in 2012 — one aspect of a more extensive Fasika celebration — is more akin to those cases 'in which the mere inability to provide a small number of meals commensurate with a prisoner's religious dietary restrictions was found to be a de minimis burden' than those cases, like *Ford*, in which the prisoner suffered complete exclusion from participation in a religious holiday.

(*Id.* (citing *Ford*, 352 F.3d at 594 n.12).

*Hamilton* does not support Defendants' argument; in fact, the opposite is true. Here, Plaintiff alleges that, on the first night of Shavuot, Defendants told him and the other Jewish inmates "that they would not be able to congregate as a group for prayers" and "that they would not be taken to observe [Shavuot] that night." (SAC ¶¶ 16–17.) Plaintiff then alleges that, on the second night of Shavuot, "[a]t the *inception* of prayers, Defendants abruptly interrupted the prayers and commanded them to stop." (*Id.* ¶ 19 (emphasis added).) Construed liberally, Plaintiff alleges that he was entirely denied observance of both the first and second nights of Shavuot. This case is, then, quite unlike *Hamilton*, and rather close to *Ford*, "in which the prisoner suffered complete exclusion from participation in a religious holiday." *Hamilton*, 2016 WL 881126, at *7 (citation omitted).

Defendants also argue that they "could reasonably have believed that they were not violating any clearly established law." (Defs.' Mem. 13.) Yet, it has long been "clearly established" in the Second Circuit that "prison officials may not substantially burden inmates' right to religious exercise without some justification." *Salahuddin*, 467 F.3d at 275–76. No legitimate penological justification is suggested in the Second Amended Complaint. Plaintiff alleges that Defendants, on the first night of Shavuot, told Plaintiff and the other Jewish inmates "that they would not be able to congregate as a group for prayers," and "that they would not be taken to observe [Shavuot] that night," despite the fact that Fishkill allegedly maintained a "list of inmates who would be observing [Shavuot] at the facility." (SAC ¶¶ 14, 17.) Plaintiff also alleges that Defendants, on the second night of Shavuot, "abruptly interrupted" Plaintiff and the other Jewish inmates "[a]t the inception of the prayers," "commanded them to stop," and told them that they "'didn't have time for their prayers' because they had 'things to do', 'just hurry up, eat, and let's go!'" (SAC ¶ 19.) Nor do Defendants offer a justification, though admittedly their ability to do so is limited by the fact that they have filed a Rule 12(b)(6) motion to dismiss. (*See generally* Defs.' Mem.; Defs.' Reply.) Defendants have, in sum, not shown that "reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citation and quotation marks omitted).

Qualified immunity is an affirmative defense on which Defendants bear the burden of proof. *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012) (citation omitted). For qualified immunity to bar suit at the motion to dismiss stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citations and quotation marks omitted). Defendants fail to satisfy their burden at this stage. Accordingly, the Court declines to grant Defendants qualified immunity against money damages on Plaintiff's First Amendment free exercise claim.

## 2. Eighth Amendment Claim

Plaintiff's second cause of action alleges that Defendant, in preventing him from observing Shavuot, violated his Eighth Amendment right not to be subject to cruel and unusual punishment. (SAC ¶¶ 28–32.)

To state a cognizable Eighth Amendment challenge to conditions of confinement, a plaintiff must plead both an objective element and a mental-state element. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). The objective element requires a plaintiff demonstrate the existence of conditions that are "sufficiently serious," such that he was denied "the minimal civilized measure of life's necessities." *Id.* (citation omitted). "[T]here is no 'static test' to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (alterations omitted) (ultimately citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The mental-state element requires a plaintiff demonstrate that the defendant acted with "deliberate indifference." *Farmer*, 511 U.S. at 835. "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 839–40). "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates."

*Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citation omitted). The plaintiff must, in

other words, allege "more than mere negligence." *Farmer*, 511 U.S. at 835.

Here, Plaintiff fails to establish the objective element because he alleges no facts

plausibly suggesting that the restrictions imposed by Defendants on his religious observance

were so serious that he was "denied the minimal civilized measure of life's necessities," *id.* at

834 (citation omitted), that he was "deprive[d] . . . of his 'basic human needs' such as food,

clothing, medical care, and safe and sanitary living conditions," *Walker v. Schult*, 717 F.3d 119,

125 (2d Cir. 2013) (citation omitted), or that he was otherwise placed at "unreasonable risk of

serious damage to his health," *id.* (citations omitted). Plaintiff argues that "[t]he practice of

one's religion is a singular necessity that is as fundamental to life as food is for many," and that

this idea "is enshrined in the great adage — *Man does not live by bread alone* — in

Deuteronomy 8:3." (Pl.'s Mem. 6.) Citations to Scripture notwithstanding, Plaintiff points to

no case in which a court has upheld an Eighth Amendment claim based on a denial of religious

observance alone, and, indeed the case law tilts heavily the other way. *See Diggs v. Marikah*,

No. 11-CV-6382, 2012 WL 934523, at *4 (S.D.N.Y. Mar. 20, 2012) ("To set forth an Eighth

Amendment claim, a plaintiff must show . . . that the challenged conduct deprived him of the

'minimal civilized measure of life's necessities.' Even taking the Complaint as true, there is no

evidence in the record suggesting that the [120-day] deprivation of [the plaintiff's] right to attend

[religious] congregate services even approached this high threshold." (citations omitted)); *Perez

v. Westchester County Dep't of Corr.*, No. 05-CV-8120, 2007 WL 1288579, at *5 (S.D.N.Y.

Apr. 30, 2007) ("Plaintiffs "have not and cannot provide any authority for the proposition that

denial of halal food in prison would rise to the level necessary to be deemed cruel and unusual

under the Eighth Amendment." (citation and alterations omitted)); *Smith v. Goord*, No. 04-CV-

6432, 2006 WL 2850597, at *7 (W.D.N.Y. Sept. 22, 2006) ("[The plaintiff's] allegations of 'religious proselytizing' by the . . . defendants . . . do not sufficiently allege facts that would constitute a serious deprivation of a basic need or violate contemporary standards of decency." (citing *Rhodes*, 452 U.S. at 347)). Put simply, the Eighth Amendment does not protect inmates' spiritual health. *See March v. Aramark Corp.*, No. 17-CV-189, 2018 WL 1524606, at *5 (E.D. Tenn. Mar. 28, 2018) (rejecting Eighth Amendment claim that the provision of non-kosher food to a Jewish inmate "'is tantamount to pollution of the soul'" because the inmate did "not set forth allegations that suggest that any [d]efendant has provided [the plaintiff] foods that created a risk of serious harm to [his] health or safety"). There is no allegation that Plaintiff's physical health was in any way affected by Defendants' alleged restriction on Plaintiff's religious observance. Accordingly, Plaintiff's Eighth Amendment claim is dismissed.

### 3. Due Process Claim

Plaintiff's third cause of action alleges that he was "deprived of his right to religious observance" without due process of law. (SAC ¶¶ 33–37.) It is unclear whether Plaintiff is claiming a violation of procedural or substantive due process, or both.

To the extent Plaintiff alleges a substantive due process claim, it is identical to Plaintiff's First Amendment free exercise claim. "Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Kia P. v. McIntyre*, 235 F.3d 749, 757–58 (2d Cir. 2000) (citation omitted). Because Plaintiff does not allege that Defendants engaged in any additional conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," the Court concludes that Plaintiff's substantive due process claim is "subsumed in [his] more particularized" First

Amendment free exercise claim. *Velez v. Levy*, 401 F.3d 75, 93–94 (2d Cir. 2005) (citation omitted). Accordingly, the Court dismisses Plaintiff's Fourteenth Amendment substantive due process claim.

To the extent Plaintiff alleges a procedural due process claim, Plaintiff "must establish (1) that he possessed a liberty interest and (2) that [Defendants] deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alterations and quotation marks omitted). Plaintiff identifies no liberty interest here. Liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "The deprivation of access to communal religious services has been held not to rise to a level of 'atypical and significant hardship.'" *Scott v. Uhler*, No. 16-CV-403, 2017 WL 9511167, at *4 (N.D.N.Y. Feb. 8, 2017) (citing *Arce v. Walker*, 139 F.3d 329, 332 (2d Cir. 1998)), *adopted by* 2017 WL 1034792 (N.D.N.Y. Mar. 17, 2017); *see also Arce*, 139 F.3d at 332, 337 (affirming dismissal of procedural due process claim in which the plaintiff alleged his 18-day stay in SHU denied him access to communal religious services (citing *Farmer v. Hawk*, No. 94-CV-2274, 1996 WL 525321, at *6 (D.D.C. Sept. 5, 1996))); *Chavis v. Chappius*, No. 06-CV-543, 2015 WL 1472117, at *14 (W.D.N.Y. Mar. 31, 2015) ("[T]he deprivation of exercise and access to communal religious services has been held not to rise to a level of [an atypical] and significant hardship."); *Valentino v. Jacobson*, No. 97-CV-7615, 1999 WL 14685, at *3 (S.D.N.Y. Jan 15, 1999) (relying on *Arce* to hold that an inmate held in segregation without access to religious services does not face "an 'atypical and significant' hardship when compared to the ordinary incidents of prison life"); *Farmer*, 1996 WL 525321, at *6 (holding that the "denial of access to religious services . . . [is] not so atypical or significant in relation to the

ordinary incidents of prison life that they constitute deprivations of a liberty interest" (citations, alterations, and quotation marks omitted)).  Accordingly, because Plaintiff fails to state a Fourteenth Amendment procedural due process claim, it is dismissed.

### 4.  *Monell* Claim

Plaintiff's seventh cause of action is a *Monell* claim against Defendant Annucci, as DOCCS Commissioner.  "A claim asserted against a [defendant] in his official capacity . . . is in effect a claim against the governmental entity itself . . . for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Lore*, 670 F.3d at 164 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))).  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91).  A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).  Moreover, a plaintiff also must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury.  *See Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly

sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between [the municipal inadequacy alleged] and the particular constitutional violation at issue."); *see also Simms v. City of New York*, 480 F. App'x 627, 629 (2d Cir. 2012) ("[T]he plaintiff must 'demonstrate that, through its deliberate conduct, the municipality itself was the moving force behind the alleged injury.'" (quoting *Roe*, 542 F.3d at 37 (alteration omitted))).

Here, Plaintiff alleges, under the fourth category of *Monell* claims, that Annucci failed to "properly supervise the Downstate Facility corrections officers and employees under his supervision," that this failure "was due to a custom, practice, [or] policy" of "deliberate indifference to the constitutional and civil rights of [Jewish] persons taken into the custody of Downstate," and that Annucci "knew of the Downstate Facility corrections officers and employees' prior violations of inmates' constitutional and civil rights, but failed to take disciplinary action against them." (SAC ¶¶ 52–60.)

A failure to supervise or discipline can constitute a municipal custom "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). To establish deliberate indifference, a plaintiff must demonstrate that (1) the "defendants knew to a moral certainty that the [municipality] would confront a given situation"; (2) "the situation presented the [municipality] with a difficult choice or there was a history of its mishandling the situation"; and

(3) "the wrong choice by the [municipality] would frequently cause the deprivation of [the plaintiff's] rights." *Reynolds*, 506 F.3d at 192 (citation omitted). "[D]emonstration of deliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (citations omitted).

Applying these principles to this case, the Court concludes that Plaintiff has not sufficiently alleged that the need for more or better supervision was so obvious such that it may fairly be said that Annucci (and, by extension, DOCCS) was deliberately indifferent to the alleged religious observance deprivation at issue. The Second Amended Complaint alleges that Plaintiff "had previously filed suit for the denial of his right to practice his faith while at [DOCCS'] Riverview Facility[,] where he was previously incarcerated on the instant offense, but was not permitted to proceed [in that lawsuit] because he had not pursued the [relevant] grievance procedure." (SAC ¶ 22.) It appears that Plaintiff is referring to a case in the Northern District of New York, in which the court granted summary judgment against Plaintiff's First Amendment free exercise and failure-to-supervise claims based on prison officials' alleged restrictions on the observance of Jewish holidays, including Shavuot. *See Kravitz v. Fischer*, No. 12-CV-1011, 2014 WL 4199245, at *3, *12, *16–17 (N.D.N.Y. Aug. 22, 2014). In Plaintiff's view, this lawsuit placed Defendants "on formal notice about their ongoing practice regarding the denial of the Plaintiff and other Jewish inmates the right to practice their faith." (SAC ¶ 22.) It is true that Plaintiff may establish "that the need for more or better supervision to protect against constitutional violations was obvious" by "showing that there were repeated complaints of civil rights violations." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (citation and quotation marks omitted). "There is no bright line rule for how many complaints of civil rights violations is sufficient to show the need for more

supervision, nor is there a bright line rule for how recent those complaints must be." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *20 (S.D.N.Y. Mar. 26, 2015). Yet, Plaintiff's citation to his own prior civil rights complaint, dismissed on non-merits grounds, does not show DOCCS had "a history of . . . mishandling the situation" or that the "need to act [was] so obvious" such that it may fairly be said that DOCCS had a custom or practice "likely to result in a deprivation of federal rights." *Reynolds*, 506 F.3d at 192 (citing *City of Canton*, 489 U.S. at 387); *see also Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (affirming dismissal of *Monell* claim where, "other than the plaintiff, the amended complaint provides only one additional example of a similar incident"); *Falls v. Campbell*, No. 17-CV-35, 2019 WL 1255768, at *6 (S.D.N.Y. Mar. 19, 2019) ("[T]he two lawsuits cited by [the plaintiff] are insufficient to establish a pattern of unconstitutional activity. To begin, neither resulted in an adjudication of liability. The court in [one case] granted summary judgment in favor of the defendants for failure to exhaust administrative remedies, and [the plaintiff] makes no allegation that the case was otherwise resolved in a way that suggests [the municipality] was deemed culpable." (citation omitted)); *Ameduri v. Vill. of Frankfort*, 10 F. Supp. 3d 320, 341 (N.D.N.Y. 2014) ("The Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits . . . is not probative of the existence of an underlying policy by a municipality, police department, or department of corrections." (collecting cases)). Accordingly, Plaintiff's *Monell* claim against Defendant Annucci is dismissed.

### 5. State-Law Claims

Plaintiff's fourth, fifth, and sixth causes of action, (*see* SAC ¶¶ 38–51), are claims under Article 1 of the New York Constitution, which provides in relevant part for freedom of religion, freedom from cruel and unusual punishment, and due process. N.Y. Const. Art. 1 §§ 3, 5, 6.

These claims are barred by Section 24 of the New York Correction Law, which provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee."  N.Y. Correct. Law § 24; *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court).  It is "well settled that [§] 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *Ierardi v. Sisco*, 119 F.3d 183, 186 (2d Cir. 1997) (citation omitted).  Here, Plaintiff's denial-of-religious-observance allegations "are by their very nature based on Defendants' actions within the scope of their employment." *Aponte v. Fischer*, No. 14-CV-3989, 2018 WL 1136614, at *11 (S.D.N.Y. Feb. 28, 2018) (citation omitted).  Put differently, Defendants' actions as alleged in the Second Amended Complaint clearly "arose as a result of [their] discharging their duties as correctional officers." *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994).  Therefore, Plaintiff's state law claims are barred.

### III.  Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted in part and denied in part.  Plaintiff's second, fourth, fifth, and sixth causes of action are dismissed *with* prejudice.  Plaintiff's third and seventh causes of action are dismissed *without* prejudice.[3]  If Plaintiff wishes to file a third amended complaint, Plaintiff must do so within 30 days of the date of this Opinion.  Plaintiff should include within that third amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider.

---

[3] Plaintiff's first cause of action remains.

Plaintiff is advised that the third amended complaint will replace, not supplement, all prior complaints and filings. The third amended complaint must contain *all* of the claims and factual allegations that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion, *(see* Dkt. No. 55), and to mail a copy of this Order to Plaintiff.

The Court will hold a Status Conference on May 23, 2019, at 10:00 a.m.

SO ORDERED.

Dated: March 29, 2019
      White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

23