UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAY KRAVITZ,

                          Plaintiff,

        v.

S. PURCELL, A. BAKER, L. ANDREU,
D. McCRAY, G. ST. VICTOR,
D. McMAHON, OFFICER WASEILER, *and*
SGT. ZUPAN,

                          Defendants.

No. 16-CV-8999 (KMK)

OPINION & ORDER

---

Appearances:

Jay S. Kravitz
Earlton, NY
*Pro Se Plaintiff*

Amanda Yoon, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Jay S. Kravitz ("Plaintiff"), proceeding pro se, brings this Action against Samuel Purcell

("Purcell"), Adolphus Baker ("Baker"), Luis Andreu ("Andreu"), David McCray ("McCray"),

Gregory St. Victor ("St. Victor"), David McMahon ("McMahon"), Joseph Wassweiler

("Wassweiler"), and John Zupan ("Zupan"; together, "Defendants"), pursuant to 42 U.S.C.

§ 1983, based on Defendants' alleged violation of Plaintiff's First Amendment free exercise

rights in prohibiting him from observing the Jewish holiday of Shavuot while incarcerated at the

Downstate Correctional Facility in Fishkill, NY ("Downstate").  (*See generally* Third Am.

Compl. ("TAC") (Dkt. No. 80).)[1]  Before the Court are Defendants' Motion for Summary

Judgment (the "Motion") and Plaintiff's Cross-Motion for Summary Judgment (the "Cross-

Motion").  (*See* Defs.' Not. of Mot. (Dkt. No. 127); Pl.'s Not. of Cross-Mot. (Dkt. No. 138).)

For the foregoing reasons, Defendants' Motion is granted and Plaintiff's Cross-Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Rule 56.1,

(*see* Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 130); Pl.'s Rule 56.1 Statement ("Pl.'s

56.1") (Dkt. No. 141); Defs.' Rule 56.1 Counter-Statement ("Defs.' Counter 56.1") (Dkt.

No. 144)), and the admissible evidence submitted by the Parties. [2]  The facts as described below

are in dispute only to the extent indicated.

---

[1] The Court notes that Plaintiff has incorrectly identified Wassweiler as "Waseiler." (*See* TAC.)

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The non-moving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  "Pro se litigants are not excused from meeting the requirements of Local Rule 56.1," *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021) (italics, alteration, and citation omitted), and "[a] non[-]moving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same).  Here, Defendants filed and served their Statement pursuant to Rule 56.1, (*see* Defs.' 56.1, *see also* Dkt. No. 127-1), and filed and served a Statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (*see* Dkt. Nos. 137, 127-1).  While Plaintiff submitted a 56.1 Statement in support of his Cross-Motion, (*see* Pl.'s 56.1)—to which Defendants responded, (*see* Defs.' Counter 56.1)—he did not submit a Rule 56.1 Counter-Statement in response to Defendants' 56.1 Statement.  As such, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested and admissible.  *See Brandever v. Port Imperial Ferry Corp.*, No. 13-

### 1.  Plaintiff's Background & Incarceration at Downstate

Plaintiff is currently and has been a member and practitioner of the Jewish faith since

birth.  (Defs.' 56.1 ¶ 1; Pl.'s 56.1 ¶ 2; Defs.' Counter 56.1 ¶ 2; *see also* Decl. of Amanda Yoon in

Supp. of Mot. ("Yoon Decl.") (Dkt. No. 129) Ex. A ("Pl. Dep."), at 34:21–25 (Dkt. No. 129-1).)

While Plaintiff's current mode of religious observance does not conform with Orthodox Jewish

practices, Plaintiff was raised observing Orthodox Jewish practices, regularly engages in Jewish

prayer and study, routinely attends shul, observes all High Holy Days in addition to all other

---

CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal,* No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record," including Plaintiff's 56.1 Statement, affidavit, and deposition testimony, when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted); *see also Day v. MTA N.Y.C. Transit Auth.*, No. 17-CV-7270, 2021 WL 4481155, at *9 (S.D.N.Y. Sept. 30, 2021) ("[W]here a pro se plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics and citation omitted)); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 502 n.1 (S.D.N.Y. 2015) (considering "the statements and documents in [the] [p]laintiff's opposition papers to determine if there are any material issues of fact based on the evidence in the record," but disregarding factual assertions that "do not contain citations to the record, or are not supported by the citations in the record"); *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.,* No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response).

Where possible, the Court has relied on the undisputed facts in the Parties 56.1 submissions.  However, direct citations to the record have also been used where relevant facts were not included in any of the Parties' Rule 56.1 submissions, or where the Parties did not accurately characterize the record.

Jewish holidays, and adheres to many Jewish laws, such as the wearing of a kippah.  (*See* Pl.
Dep. 35:1–41:20.)

Plaintiff was admitted to Downstate in May 2014 following a parole violation, (Defs.'
56.1 ¶ 3; *see also* Pl. Dep. 23:2–4, 49:10–13), at which time he notified the intake officers that he
practiced Judaism and wished to continue his religious practice while incarcerated; as a result,
Plaintiff was registered as a Jewish inmate and was permitted to keep his religious prayer books,
tallit, and tefillin, (Defs.' 56.1 ¶ 4; Pl.'s 56.1 ¶¶ 3–4; Defs.' Counter 56.1 ¶¶ 3–4).  While
Plaintiff was incarcerated at Downstate, he was provided with kosher meals and participated in
prayers with a Rabbi who visited the facility on a weekly basis.  (Defs.' 56.1 ¶¶ 5–6.)

### 2.  The June 3, 2014 and June 4, 2014 Incidents

Shavuot is one of three major festivals in Judaism, alongside Passover and Sukkot, and is
celebrated over two days with festive meals and prayer services.  (Defs.' 56.1 ¶ 7; Pl.'s 56.1
¶¶ 5–7.)  In 2014, Shavuot began on the evening of June 3 and ended on the evening of June 5.
(Pl.'s 56.1 ¶ 8; Defs.' Counter 56.1 ¶ 8.)  Per the 2014 New York State Department of
Corrections and Community Supervision ("DOCCS") Religious Holy Day Calendar, Jewish
inmates were scheduled to have 1 hour and 45 minutes for services and meals on the evening of
June 3 and June 4 for Shavuot.  (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶¶ 8–9; Defs.' Counter 56.1 ¶¶ 8–9.)
The Rabbi associated with the facility submitted an application for a special religious event for
Shavuot, which was approved; Jewish inmates were scheduled to have festive meals at the #4
Dining Room from 8pm to 10pm on June 3 and June 4, 2014.  (Defs.' 56.1 ¶ 9; Pl.'s 56.1 ¶¶ 10–
11; Defs.' Counter 56.1 ¶¶ 10–11; *see also* Yoon Decl. Ex. C (Dkt. No. 129-3).)

On June 3, 2014, Plaintiff was released from his housing unit—Block 3a in Complex 3—
at approximately 8pm to observe Shavuot.  (Defs.' 56.1 ¶¶ 10–11; Pl.'s 56.1 ¶ 13; Defs.' Counter
56.1 ¶ 13.)  Plaintiff then walked to what Plaintiff refers to as a "staging area" and what

Defendants identify as the East Lobby of Complex 3. (Defs.' 56.1 ¶ 12; Pl.'s 56.1 ¶ 13; Defs.'
Counter 56.1 ¶ 13.) Rather than continue on to the dining hall, Plaintiff and the other Jewish
inmates were given a kosher meal that consisted of a peanut butter sandwich in a brown bag
while standing in the East Lobby. (Defs.' 56.1 ¶ 13; Pl.'s 56.1 ¶ 15.) Plaintiff claims that
correction officers "literally tossed" the sandwiches to Plaintiff and the other inmates while using
profanity. (Pl.'s 56.1 ¶ 15; Pl. Dep. 67:11–68:8.) At approximately 8:25pm, Plaintiff walked
back from East Lobby to his housing block; Plaintiff ate his meal and prayed in his cell. (Defs.'
56.1 ¶ 14; Pl.'s 56.1 ¶ 15; *see also* Pl. Dep. 83:8–20; Defs.' Counter 56.1 ¶ 28.)

Plaintiff wrote letters to the facility superintendent and the director of religious
programming that evening to express his frustration that he and the other Jewish inmates were
not provided with the 1 hour and 45 minutes allowed under DOCCS policy to gather, eat, and
pray. (Pl. Dep. 84:25–85:21; *see also* Pl.'s 56.1 ¶ 19.) Plaintiff claims that the following
morning, on June 4, the facility superintendent and the director of religious programming
responded to Plaintiff's letters by visiting his cell and assuring him that he would have an
opportunity to properly celebrate the second night of Shavuot that evening. (Pl. Dep. 85:16–
86:16; *see also* Pl.'s 56.1 ¶ 20.)

On the evening of June 4, Plaintiff was released from his housing block at around 7:50pm
to observe the second night of Shavuot, and was escorted to the #4 Dining Room. (Defs.' 56.1
¶ 15.) Plaintiff and the other Jewish inmates were provided with more substantial kosher meals,
consisting of Challah bread, grape juice, and a hot meal, and Plaintiff was asked by other Jewish
inmates to lead the group in Jewish prayers. (Defs.' 56.1 ¶ 17; Pl.'s 56.1 ¶¶ 21–22; Defs.'
Counter 56.1 ¶¶ 21–22.) Plaintiff began to lead the group in prayers, (Pl.'s 56.1 ¶ 23; Defs.'
Counter 56.1 ¶ 23), but Plaintiff claims that the group was interrupted by correction officers who

told Plaintiff that they did not have time for the inmates' prayers and pushed the group to eat

quickly, again using profanity, (Pl.'s 56.1 ¶ 24; Pl. Dep. 92:5–99:17).  Plaintiff returned to his

housing block at approximately 8:45pm.  (Defs.' 56.1 ¶ 18; Pl.'s 56.1 ¶ 24; *see also* Defs.'

Counter 56.1 ¶ 30.)

### 3.  Certain Defendants' June 3, 2014 and June 4, 2014 Assignments

Zupan did not work at Downstate on June 3, 2014.  (Defs.' 56.1 ¶ 19.)  On June 4, 2014,

Zupan worked as a kitchen sergeant from 12:30pm to 8:30pm, though from approximately 5pm

to 8:30pm, Zupan supervised correction officers running medication and other escorting duties

outside of the kitchen area.  (*Id.* ¶¶ 20–22.)  Zupan was not assigned to handle or supervise any

Jewish or other religious services, and was not in the #4 Dining Room on June 4, 2014.  (*Id.*

¶¶ 23–24.)

Purcell was assigned to the Complex 3 Recreation Room—the gym used by inmates

housed in Complex 3—from 1pm to 9pm on June 3 and 4, 2014, and was responsible for

ensuring the security, custody, and control of the inmates using the Complex 3 Recreation Room.

(*Id.* ¶¶ 25–27.)  Purcell was not assigned to handle or oversee any Jewish or other religious

services on either day, and was in neither the East Lobby nor the #4 Dining Room on either

evening.  (*Id.* ¶ 28.)

Baker was assigned to #3 Dining Room/Medication from 1pm to 9pm on June 3 and 4,

2014, and was responsible for ensuring the security, custody, and control of the inmates eating

dinner in #3 Dining Room until 6:30pm and to escort inmates from their housing units in

Complex 3 to medications thereafter.  (*Id.* ¶¶ 29–30.)  Baker was not assigned to handle any

Jewish or other religious service on either day, and was in neither the East Lobby nor the #4

Dining Room on either evening.  (*Id.* ¶ 31.)

St. Victor was assigned as a "first officer" for Housing Block 3a—Plaintiff's housing block in Complex 3—from 3pm to 11pm on June 3 and 4, 2014, and was responsible for opening and closing gates and individual cells in the housing unit and to ensure the security, custody, and control of the inmates in Housing Block 3a. (*Id.* ¶¶ 32–33.) St. Victor was not assigned to handle any Jewish or other religious service on either day, and was in neither the East Lobby nor the #4 Dining Room on either evening. (*Id.* ¶ 35.)

McCray was not at Downstate on June 4, 2014 after 3pm. (*Id.* ¶ 36.) McCray was assigned to Complex 3 Patrol from 7am to 11pm on June 3, 2014, and was responsible for escorting inmates housed in Complex 3 to the facility's Office of Mental Health and other parts of the facility. (*Id.* ¶¶ 37–38.) McCray was not assigned to handle any Jewish or other religious service on either day, and was not in the East Lobby on the evening of June 3. (*Id.* ¶ 39.)

Andreu was assigned to Medication / Keeplock / Recreation on June 3 and 4, 2014 from 1pm to 9pm, and was responsible for ensuring the security, custody, and control of the keeplock inmates who were using the outdoor recreation area; assisting dining services at #3 Dining Room from 4pm to 5pm; and escorting inmates housed in the housing units in Complex 3 to medications. (*Id.* ¶¶ 40–41.) Andreu was not assigned to handle any Jewish or other religious service on either day, and was in neither the East Lobby nor the #4 Dining Room on either evening. (*Id.* ¶ 42.)[3]

_____

[3] Plaintiff disputes Defendants' claims that Zupan, Purcell, Baker, St. Victor, McCray, and Andreu were not present for the incidents at issue, the evidentiary basis for which is his own affidavit. (*See* Pl.'s 56.1 ¶¶ 14–17, 21, 24.) However, "where a party relies on affidavits . . . to establish facts" on summary judgment, the statements "'must be made on personal knowledge,'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting FED. R. CIV. P. 56(c)(4)), and Plaintiff admitted at his deposition that he does not have personal knowledge as to whether Zupan, Purcell, Baker, St. Victor, McCray, or Andreu were involved in the incidents at issue. (*See* Pl. Dep. 107:21–112:18.) In fact, Plaintiff stated repeatedly at his deposition that while

B. Procedural History

Plaintiff's initial Complaint was docketed on November 18, 2016. (*See* Dkt. No. 2.)

Plaintiff's request to proceed in forma pauperis was granted on November 21, 2016. (*See* Dkt.

No. 3.) The Court entered a *Valentin* order on November 30, 2016, (*see* Dkt. No. 4), to which

Defendants responded on February 15, 2017, identifying Purcell, Baker, Andreu, McCray, and

St. Victor as the "escort officers" assigned to the gym and lobby areas in Complex 3 at

Downstate, which the facility suggested may have been the area in which the alleged incident

took place; McMahon and Wassweiler as the "officers assigned to the Jewish holiday services";

and Zupan as the "area supervisor," (Dkt. No. 11).

On May 10, 2017, Plaintiff's First Amended Complaint ("FAC") was docketed, bringing

seven separate causes of action against Purcell, Baker, Andreu, McCray, St. Victor, McMahon,

Wassweiler, and Zupan in addition to New York State Department of Corrections Commissioner

Anthony Annucci ("Annucci"), ex officio. (*See* First Am. Compl. (Dkt. No. 17).) On

August 24, 2017, Annucci filed a pre-motion letter in anticipation of filing a motion to dismiss

the FAC, in which Annucci noted that none of the other defendants named in the FAC had been

served. (*See* Dkt. No. 21.) Plaintiff then sought an order of service to serve the unserved

defendants, (*see* Dkt. No. 23), which the Court entered on September 15, 2017, (*see* Dkt.

No. 24).

_____

incarcerated at Downstate, Plaintiff made a point of not making eye contact with any correction officers or learning any correction officer's identity. (*See, e.g., id.* at 72:7–16 ("I don't think there was anyone [B]lack. I don't know that if there was a Latino. I think they were of white race. But again, I don't pay attention. They are blue. They are blue COs. And I call them CO. And they could be a man, woman, any color, height, small, skinny, fat, don't matter. I ain't paying no attention. I don't look at them. I look down."); 80:2–5 ("I don't care who they are. They just [sic] a pair of blue pants and black shoes, and I pay no attention to the name. I don't care who they are.").) As such, Plaintiff's affidavit is insufficient to create a factual dispute as to whether Zupan, Purcell, Baker, St. Victor, McCray, or Andreu were present for the incidents at issue.

On February 27, 2018, Plaintiff's Second Amended Complaint ("SAC") was docketed, again bringing seven separate causes of action, again against Purcell, Baker, Andreu, McCray, St. Victor, McMahon, Wassweiler, and Zupan in addition to Annucci (the "SAC Defendants"). (*See* Second Am. Compl. ("SAC") (Dkt. No. 45).)  On March 9, 2018, SAC Defendants filed a pre-motion letter in anticipation of filing a motion to dismiss the SAC, (*see* Dkt. No. 48), and the Court set a briefing schedule, (*see* Dkt. No. 49).  On April 30, 2018, SAC Defendants filed a Motion To Dismiss and accompanying papers.  (*See* SAC Defs.' Mot. To Dismiss (Dkt. No. 55); SAC Defs.' Mem. of Law in Supp. of Mot. To Dismiss (Dkt. No. 56).)  Plaintiff's Opposition was docketed on May 31, 2018, (*see* Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss (Dkt. No. 58)), and SAC Defendants filed their Reply on June 15, 2018, (*see* SAC Defs.' Reply Mem. of Law in Supp. of Mot. To Dismiss (Dkt. No. 59)).  On March 29, 2019, the Court issued an Opinion & Order on SAC Defendants' Motion To Dismiss, dismissing all of Plaintiff's claims except Plaintiff's free exercise claim against Purcell, Baker, Andreu, McCray, St. Victor, McMahon, Wassweiler, and Zupan.  (*See* Op. & Order ("MTD Op.") (Dkt. No. 63).)  While the Court's dismissal of certain of Plaintiff's claims was without prejudice, Plaintiff's Third Amended Complaint ("TAC")—eventually docketed on December 5, 2019 after the entry of numerous orders to show cause—included only Plaintiff's free exercise claim, though Plaintiff brought this claim against all SAC Defendants.  (*See* TAC.)

Purcell, Baker, Andreu, McCray, St. Victor, McMahon, Wassweiler, and Zupan filed their Answer on December 17, 2019, (*see* Dkt. No. 81), and on the same day, Annucci filed a pre-motion letter in anticipation of filing a motion to dismiss Plaintiff's claims against him, (*see* Dkt. No. 82).  The Court entered a briefing schedule, and Annucci filed his Motion To Dismiss the TAC and accompanying papers on January 29 and 30, 2020.  (*See* Not. of Mot. To Dismiss

TAC (Dkt. No. 84); Mem. of Law in Supp. of Mot. To Dismiss TAC (Dkt. No. 87).)  On February 28, 2020, Plaintiff filed an affidavit in which he informed the Court that he did not oppose Annucci's Motion To Dismiss the TAC.  (*See* Dkt. No. 88.)  On March 12, 2020, Annucci filed his Reply.  (*See* Reply Mem. of Law in Supp. of Mot. To Dismiss TAC (Dkt. No. 89).)  After independently reviewing Annucci's Motion To Dismiss despite Plaintiff's concession, the Court granted Annucci's Motion To Dismiss.  (*See* Op. & Order (Dkt. No. 94).)

The remaining Parties then proceeded to discovery, (*see* Dkt. Nos. 98–117), and on February 4 and 8, 2021, the Parties filed competing pre-motion letters in anticipation of filing competing motions for summary judgment, (*see* Dkt. Nos. 122, 123).  On February 10, 2021, the Court set a briefing schedule, (*see* Dkt. No. 125); Defendants filed their Motion, 56.1 Statement, and accompanying papers on March 10, 2021, (*see* Defs.' Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 128); Yoon Decl.; Defs.' 56.1; Decl. of John Zupan in Supp. of Mot. (Dkt. No. 131); Decl. of Samuel Purcell in Supp. of Mot. (Dkt. No. 132); Decl. of Adolphus Baker in Supp. of Mot. (Dkt. No. 133); Decl. of Gregory St. Victor in Supp. of Mot. (Dkt. No. 134); Decl. of David McCray in Supp. of Mot. (Dkt. No. 135); Decl. of Luis Andreu in Supp. of Mot. (Dkt. No. 136); Local Rule 56.2 Not. (Dkt. No. 137)), and Plaintiff filed his Cross-Mot.; Pl.'s Mem. of Law in Supp. of Cross-Mot. ("Pl.'s Mem.") (Dkt. No. 139); Aff. of Jay Kravitz in Supp. of Cross-Mot. ("Pl. Aff.") (Dkt. No. 140); Pl.'s 56.1).  Defendants filed their Opposition to Plaintiff's Cross-Motion on April 9, 2021, (*see* Defs.' Mem. of Law in Opp'n to Cross-Mot. ("Defs.' Opp'n Mem.") (Dkt. No. 142); Decl. of Amanda Yoon in Opp'n to Cross-Mot. (Dkt. No. 143); Defs.' Counter 56.1), and their Reply in support of Defendants' Motion on May 14, 2021, (*see* Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply Mem.") (Dkt.

No. 149)).  On May 25, 2021, Plaintiff filed his joint Reply in support of his Cross-Motion and Opposition to Defendants' Motion.  (*See* Pl.'s Mem. of Law in Reply in Supp. of Cross-Mot. & Opp'n to Defs.' Mot. ("Pl.'s Reply Mem.") (Dkt. No. 150).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the [C]ourt must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d

11

Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso*,

691 F.3d at 230 (quoting FED. R. CIV. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham,* 848 F.2d at 344; *Mercado v. Div. of N.Y. State Police,* No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted). Further, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing party's pro se status" (italics omitted)). Nonetheless, "proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston*, 27 F. Supp. 3d at 351 (italics and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

### B.  Analysis

Plaintiff claims that Defendants' alleged conduct violated Plaintiff's right to free exercise of his religion under the First Amendment and caused him "serious personal injuries, humiliation[,] and emotional distress," for which he seeks $2 million in damages.  (TAC ¶¶ 23–26.)  Defendants argue that Plaintiff's free exercise claim fails because the undisputed evidence demonstrates that the alleged incidents did not substantially burden Plaintiff's sincerely held religious beliefs, and moreover, that the alleged incidents demonstrate at most, negligence by those involved, which is insufficient to support a claim under the Free Exercise Clause.  (*See* Defs.' Mem. 5–8.)  Defendants further argue that Plaintiff has failed to demonstrate that Zupan, Purcell, Baker, St. Victor, McCray, or Andreu were personally involved in the alleged constitutional violations, precluding § 1983 liability.  (*See id.* at 9–13.)  In the alternative, Defendants argue that they are entitled to qualified immunity.  (*See id.* at 14–15.)  Plaintiff argues that he is entitled to summary judgment because "Shavuot is a holiday of singular importance in the Jewish calendar," and Defendants have failed to demonstrate that there was any emergency or exigent circumstances that justified their actions.  (Pl.'s Mem. 9–11.)[4]

The Court addresses these arguments to the extent necessary to decide the instant Motion and Cross-Motion.

### 1.  Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must show:

---

[4] When citing to Plaintiff's Memorandum of Law in Support of his Cross-Motion, the Court refers to the ECF-stamped page numbers at the top right-hand corner of each page.

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (emphases and quotation marks omitted). "The fact that a defendant is a supervisor is not enough to impute personal involvement onto that person; liability requires, rather, that the 'defendant, acting through the official's own individual actions, has violated the Constitution.'" *Siler v. Munroe*, No. 20-CV-5794, 2021 WL 6064701, at *7 (S.D.N.Y. Dec. 22, 2021) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)).

Here, the undisputed evidence demonstrates that Zupan, Purcell, Baker, St. Victor, McCray, and Andreu were not personally involved in the alleged deprivation of Plaintiff's free exercise rights. *See supra* I.A.3. As such, they are entitled to summary judgment. *See, e.g.*, *Ridge v. Davis*, No. 18-CV-8958, 2022 WL 357020, at *10 (S.D.N.Y. Feb. 7, 2022) (granting summary judgment to certain defendants in a § 1983 suit bringing excessive force claims where "the record fails to establish that [these defendants] were directly involved in the alleged assault of [the] plaintiff"); *Allah v. Annucci*, No. 16-CV-1841, 2020 WL 3073184, at *8 (S.D.N.Y. June 10, 2020) (granting summary judgment to a § 1983 defendant where the record did not establish the defendant's personal involvement).

Plaintiff appears to argue that all Defendants' personal involvement is established based on the fact that these individuals were identified by Defendants' counsel in his response to the Court's *Valentin* Order. (*See* Pl.'s Reply Mem. 3–4.)[5] "However, a response to a *Valentin*

---

[5] When citing to Plaintiff's Reply Memorandum of Law in Support of his Cross-Motion and in Opposition to Defendants' Motion, the Court refers to the ECF-stamped page numbers at the top right-hand corner of each page.

request has never, as far as this [C]ourt is aware, been treated as an admission of actual involvement, as opposed to a suggestion of who might have been involved that is offered to the plaintiff as a means of facilitating the commencement of the lawsuit." *Harris v. City of New York*, No. 15-CV-8456, 2017 WL 6501912, at *5 (S.D.N.Y. Dec. 15, 2017). Indeed, in Defendants' *Valentin* response, Defendants' counsel made clear that Downstate officials had identified Purcell, Baker, Andreu, McCray, and St. Victor because they were the escort officers assigned to either the gym or lobby area in Complex 3, which Downstate officials "suggested" may be the areas to which Plaintiff was referring when he alleged that the incident on June 3, 2014 took place in a "staging area." (Dkt. No. 11.) Defendants' counsel identified Zupan solely because Zupan was the area supervisor on June 4, 2014. (*See id.*) In short, Defendants' counsel made clear that these individuals were the facility's best guess for the correction officers to whom Plaintiff was referring, based on the little information Plaintiff provided in his initial Complaint. (*See* Compl. ¶¶ 12–14.) *See also Harris*, 2017 WL 6501912, at *5 ("All that one can discern from a *Valentin* response is that the [facility], trying to ascertain who might have been present at or involved in a particular incident, concluded that [these individuals were] candidate[s] for involvement."). Moreover, while a pro se litigant is entitled to *assistance* from the district court in identifying a defendant pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1996), this process does not absolve a pro se litigant like Plaintiff from accurately identifying the defendants that he intends to sue, *see Silva v. Kilham*, No. 19-CV-1719, 2020 WL 7388960, at *1 n.1 (D. Conn. Dec. 16, 2020) (dismissing John Doe defendant where the plaintiff had failed to identify the Doe defendant after discovery).

Accordingly, the Court grants summary judgment to Zupan, Purcell, Baker, St. Victor, McCray, and Andreu, leaving only McMahon and Wassweiler.[6]

### 2. Free Exercise Claim

It is well-established that the First Amendment affords inmates constitutional protection to practice their religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (explaining that "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion"); *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (explaining that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause"). However, because of inmates' unique circumstances, their free exercise rights are necessarily more constrained than those of other persons. *See Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990) ("Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, are the interests of prison officials

---

[6] The Court notes that Plaintiff has failed to offer any admissible evidence to support his claim that McMahon or Wassweiler were personally involved in the alleged constitutional deprivations, either. While Plaintiff states in his 56.1 Statement that McMahon and Wassweiler were involved in the June 4, 2014 incident, (*see* Pl.'s 56.1 ¶ 21), the evidentiary basis for this statement is his own affidavit, which is insufficient to establish either McMahon or Wassweiler's involvement because Plaintiff admitted at his deposition that he did not have personal knowledge as to either's involvement in the June 4, 2014 incident. (*See* Pl. Dep. 111:17–112:10.) *See DiStiso*, 691 F.3d at 230 ("[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge.'" (quoting FED. R. CIV. P. 56(c)(4))). *See also supra* Note 3.

Because the burden of proving personal involvement would fall on Plaintiff at trial, it likely would have been sufficient for Defendants to "point to a lack of evidence to go to the trier of fact on [this] element of [Plaintiff's] claim," which would have shifted the burden to Plaintiff to "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs.*, 735 F.3d at 123. But Defendants have failed to do so here, in any of their briefing. (*See generally* Defs.' Mem.; Defs.' Opp'n Mem.; Defs.' Reply Mem.) As such, the Court cannot grant summary judgment to McMahon and Wassweiler on this basis. However, this oversight does not ultimately affect the disposition of the instant Motion and Cross-Motion because the Court finds that Plaintiff cannot establish that his religious practice was substantially burdened by McMahon or Wassweiler. *See infra*.

charged with complex duties arising from administration of the penal system." (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974))).

A prisoner's free exercise claims are therefore "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Ford*, 352 F.3d at 588 (quoting *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988)). To succeed on a free exercise claim, an inmate must "show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *McLeod v. Williams*, No. 18-CV-115, 2020 WL 2512164, at *3 (S.D.N.Y. May 15, 2020) (quoting *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019)); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (same). "To demonstrate a 'substantial burden,' the plaintiff must show that 'the state has put substantial pressure on him to modify his behavior and to violate his beliefs.'" *Wilson v. City of New York*, No. 18-CV-2262, 2021 WL 5908860, at *4 (E.D.N.Y. Dec. 14, 2021) (alterations omitted) (quoting *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015)). That is, "[t]he relevant question in determining whether [the inmate's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the inmate's religious] practice." *Ford*, 352 F.3d at 593–94. The Second Circuit has made clear that "establishing a substantial burden is 'not a particularly onerous task.'" *Brandon*, 938 F.3d at 32 (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004)). "Once [an inmate] establishes this burden, '[t]he defendant[] then bear[s] the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.'" *Smith v. Perlman*, No. 11-CV-20, 2012 WL 929848, at *7 (N.D.N.Y. Mar. 19, 2012) (second alteration in original) (quoting *Salahuddin*, 467 F.3d at 308); *see also Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of*

*Corr. & Cmty. Supervision*, 16 F.4th 67, 83 (2d Cir. 2021) ("A prisoner's first amendment right to the free exercise of his religious beliefs may only be infringed to the extent that such infringement is reasonably related to legitimate penological interests." (quoting *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989))). The burden remains with the inmate "to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (alteration, and quotation marks omitted).

Moreover, where a plaintiff advances a free exercise claim pursuant to § 1983, the plaintiff must establish that the defendant at least had reason to know "the facts rendering [his conduct] illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001); *see also Brandon*, 938 F.3d at 38 (declining to decide whether some forms of negligence are sufficient for a free exercise claim, but explaining that deliberate indifference is sufficient); *Grullon*, 720 F.3d at 139 (explaining that liability under § 1983 requires, at least, grossly negligent or deliberately indifferent conduct). Accordingly, insofar as neither McMahon nor Wassweiler—the only remaining defendants—had reason to know that their conduct burdened Plaintiff's religious practice, they cannot be held liable for having done so. *See Porter v. Bunch*, No. 16-CV-5935, 2019 WL 1428431, at *16 (S.D.N.Y. Mar. 29, 2019) (explaining that the defendant could not be held liable for failing to provide a religious accommodation where that accommodation had not been requested); *Perez v. Westchester Cnty. Dep't of Corr.*, No. 05-CV-8120, 2007 WL 1288579, at *3 (S.D.N.Y. Apr. 30, 2007) (same). Moreover, under the doctrine of qualified immunity, a government official is immune from liability "whenever (1) his conduct 'did not violate clearly established law', or (2) 'it was objectively reasonable . . . to believe that his action did not violate such law.'" *Naumovski v. Norris*, 934 F.3d 200, 210 (2d Cir. 2019) (citing *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir 2007)). For this reason as well, insofar as

McMahon or Wassweiler's purported violations of Plaintiff's religious freedoms were the products of "reasonable mistakes of law or fact," they are shielded from liability. *Id.*

At the outset, the Court makes clear that given its finding as to personal involvement above, the only incident that remains at issue is the June 4, 2014 incident. In the TAC, Plaintiff alleges that Purcell, Baker, Andreu, McCray, and St. Victor were responsible for the deprivation of Plaintiff's free exercise rights via the incident on June 3, 2014, and McMahon, Wassweiler, and Zupan were responsible for the deprivation of Plaintiff's free exercise rights via the incident on June 4, 2014. (*See* TAC ¶¶ 16–19.) This delineation is repeated in Plaintiff's 56.1 Statement, in which Plaintiff makes clear his stance that Purcell, Baker, Andreu, McCray, and St. Victor were responsible for the incident on June 3, 2014, and McMahon, Wassweiler, and Zupan were responsible for the incident on June 4, 2014. (*See* Pl.'s 56.1 ¶¶ 14, 21.) The Court has held that Zupan, Purcell, Baker, St. Victor, McCray, and Andreu are entitled to summary judgment because the record fails establish their personal involvement in the alleged incidents, *see supra* II.B.1., leaving only Plaintiff's claims against McMahon and Wassweiler intact. Because Plaintiff's claims against McMahon and Wassweiler are limited to the June 4, 2014 incident, so too is the Court's inquiry in determining whether Plaintiff's free exercise claim survives Defendants' Motion or allows Plaintiff's Cross-Motion to succeed.

Defendants concede for purposes of the instant Motion and Cross-Motion that Plaintiff's religious beliefs are sincerely held, but argue that there is no genuine dispute of material fact that the June 4, 2014 incident did not substantially burden Plaintiff's religious beliefs. (*See* Defs.' Mem. 5–7.) The Court ultimately agrees, but not entirely for the reasons that Defendants provide.

Defendants primarily argue that the alleged curtailment of the June 4, 2014 congregate prayers did not substantially burden Plaintiff's free exercise right because "courts in the Second Circuit have repeatedly held that '[a]s a matter of law, missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion.'" (*Id.* at 5–6 (alteration in original) (quoting *McLeod*, 2020 WL 2512164, at *4)). Defendants unsuccessfully attempted to make this same argument in their Motion To Dismiss, (*see* MTD Op. 7), and it fails here for the same reasons it failed then. As Plaintiff correctly points out, (*see* Pl.'s Mem. 10), the Second Circuit made clear in *Ford* that missing even one religious service *can* constitute a substantial burden on an inmate's right to the free exercise of his religion where participation in the service "is considered central or important to [the inmate's] practice of [his religion]." *Ford*, 352 F.3d at 593–94. It is for this reason that the Court found that Plaintiff's allegations as to the critical importance of the Shavuot holiday satisfied Plaintiff's "burden of alleging that Shavuot is 'central or important' to the exercise of his faith such that missing even one service could constitute a substantial burden." (MTD Op. 10–11 (quoting *Ford*, 352 F.3d at 593–94).) Defendants make no attempt to argue or offer any evidence for the proposition that Shavuot is not central or important to Plaintiff's practice of his Jewish faith, (*see generally* Defs.' Mem.; Defs.' 56.1; Defs.' Opp'n Mem.; Defs.' Reply Mem.), and Plaintiff attests to his religious belief that "[t]he holiday of Shevuot [sic] is one of the three major festivals in Judaism [in which Jewish people] celebrate the giving of the Torah or Law on Mount Sinai," (Pl. Aff. ¶ 7). In light of the Second Circuit's instruction that "establishing a substantial burden is 'not a particularly onerous task,'" *Brandon*, 938 F.3d at 32 (quoting *McEachin*, 357 F.3d at 202), the Court finds that had McMahon and Wassweiler caused Plaintiff to miss the Shavuot prayers and

meal on June 4, 2014, that single missed celebration would have constituted a substantial burden on Plaintiff's free exercise given Shavuot's central importance.[7]

However, the Court finds that there is no genuine dispute of material fact that the June 4, 2014 incident did not substantially burden Plaintiff's religious belief because the undisputed facts demonstrate that Plaintiff's Shavuot celebration was only shortened, not denied. The record demonstrates that a Shavuot celebration consists of a festive meal and a prayer service. *See supra* I.A.2. On June 4, 2014, Plaintiff was released from his housing block at around 7:50pm, was escorted to the #4 Dining Room, and was able to congregate, pray, and eat a festive kosher meal with a group of other Jewish inmates until approximately 8:45pm. *See supra id.* While Plaintiff claims that McMahon and Wassweiler interrupted the group's prayers and pushed them to eat quickly (indeed, the group indisputably did not receive the full 1 hour and 45 minutes they should have been allotted per DOCCS policy), *see supra id.*, the undisputed evidence clearly demonstrates that Plaintiff *was* able to observe the Shavuot holiday, albeit in a shortened

---

[7] Further, the Court finds Defendants' characterization of *Ford* to be disingenuous. Defendants argue that Plaintiff's reliance on *Ford* is "entirely misplaced," "[m]ost fundamentally" because "the *Ford* court found only that the defendants in that case were not entitled to summary judgment." (Defs.' Opp'n Mem. 4.) The Court interprets this argument to mean that Defendants feel the Second Circuit's finding that the *Ford* defendants were not entitled to summary judgment is materially different from a finding that the *Ford* plaintiff was entitled to summary judgment such that any reliance on *Ford*'s reasoning by Plaintiff in arguing that summary judgment should be granted in his favor is "entirely misplaced." First, the Court does not agree with the premise that the Second Circuit's detailed opinion explaining how district courts should approach the application of the substantial burden test to a claim brought by a prisoner is applicable only when a court denies a motion for summary judgment, and not when a court grants it—nor do Defendants identify any authority for such a strict proposition. Second, Defendants' claim that "there is nothing whatsoever indicating that the [*Ford*] plaintiff . . . would be entitled to summary judgment" is simply incorrect. (*Id.* at 4.) Rather, the Second Circuit specifically stated in *Ford* that the court "*would be inclined* to hold on the basis of the record before [the court] that [the plaintiff] has established a substantial burden as a matter of law," but found it was precluded from doing so based on the potential existence of a factual dispute. *Ford*, 352 F.3d at 594 (emphasis added).

and perhaps substandard manner.  As such, Plaintiff cannot meet his burden of demonstrating

that his religious beliefs were substantially burdened.  *See, e.g.*, *Smith v. Wildermuth*, No. 11-

CV-241, 2017 WL 1379368, at *5 (N.D.N.Y. Apr. 14, 2017) (finding that the plaintiff "cannot

make the threshold demonstration of 'substantial burden' necessary to succeed on his free

exercise claim" where the plaintiff claimed that the defendant "attempted to interrupt a single

Salaah prayer," but the plaintiff "maintained his prayer during the attempted verbal

interruptions[] and . . . ultimately finished his prayer"); *Hamilton v. Countant*, No. 13-CV-669,

2016 WL 881126, at *7 (S.D.N.Y. Mar. 1, 2016) (finding no substantial burden where the

plaintiff was not able to obtain cornbread and grape juice as part of a Rastafarian Fasika

celebration, explaining "[t]he absence of the Fasika communion in 2012—one aspect of a more

extensive Fasika celebration—is more akin to those cases in which the mere inability to provide

a small number of meals commensurate with a prisoner's religious dietary restrictions was found

to be a de minimis burden than those cases like *Ford*, in which the prisoner suffered complete

exclusion from participation in a religious holiday" (footnote and quotation marks omitted));

*Robinson v. Jimminez*, No. 08-CV-902, 2012 WL 1038917, at *6 (E.D.N.Y. Mar. 6, 2012)

(finding no substantial burden where the record demonstrates that the plaintiff's "religious

worship of Rosh Hashanah was interrupted, not denied" and the plaintiff was permitted to

engage in religious practice thereafter "on a regular basis"); *Kravitz v. Fischer*, No. 12-CV-1011,

2014 WL 4199245, at *12 (N.D.N.Y. Aug. 22, 2014) (finding no substantial burden where the

defendant "was successful in preventing the group prayer on only one occasion during Sukkot,"

and the group instead "recite[d] their pre-meal blessing alone rather than as a group on a single occasion").[8]

Accordingly, the Court finds that there is no genuine dispute of material fact that McMahon and Wassweiler did not substantially burden Plaintiff's religious practice via the June 4, 2014 incident, and Defendants are entitled to summary judgment. As such, the Court declines to address Defendants' arguments that McMahon and Wassweiler's actions on June 4, 2014 constituted at most, negligence, undermining Plaintiff's substantial burden argument and entitling McMahon and Wassweiler to qualified immunity. (*See, e.g.*, Defs.' Mem. 7–8, 14–15.)[9]

### III.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted and Plaintiff's Cross-Motion for Summary Judgment is denied.

---

[8] While at the motion to dismiss stage, the Court found *Hamilton* to counsel in favor of denying Defendants' Motion To Dismiss, because the allegations in the complaint could reasonably be construed as the complete denial of Plaintiff's ability to observe Shavuot, (*see* MTD Op. 11–12), the record now before the Court demonstrates that Plaintiff was not, in fact, completely denied the ability to observe Shavuot. As such, the court's reasoning in *Hamilton* now counsels in favor of granting summary judgment for Defendants.

[9] The Court notes its heavy skepticism of Defendants' argument that there is no genuine dispute that the June 4, 2014 incident was simply the "result of miscommunication within the administration," (Defs.' Mem. 8; *see also* Defs.' Opp'n Mem. 6–7; Defs. Reply Mem. 3–4), when (1) there is evidence that Plaintiff had raised his frustrations regarding the June 3, 2014 incident with the facility superintendent and director of religious programming and been assured that the June 4, 2014 celebrations would go smoothly, *see supra* I.A.2., and (2) Plaintiff claims that McMahon and Wassweiler interrupted the group's prayers and hurried the group's meal with no explanation and used profanity, *see supra id.*

The Clerk of Court is respectfully directed to terminate the pending Motion and Cross-Motion, (Dkt. Nos. 127, 138), enter judgment for Defendants, mail a copy of this Opinion to Plaintiff, and close this case.

SO ORDERED.

Dated:   March 14, 2022
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge