USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_ 5/29/2025 __

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
Jay S. Kravitz,

            Plaintiff,

      -against-

Anthony Annucci, et al.,

            Defendants.
-------------------------------------------------------------------X

16-cv-08999-KMK-VR

**ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

   Plaintiff sues Defendants seeking to recover for harms he suffered when his

First Amendment rights were violated after he was allegedly prevented from

participating in a Jewish Shavuot service while incarcerated. (ECF No. 80).

   On April 7, 2025, Plaintiff submitted a letter to the Court seeking a pre-motion

conference regarding a discovery dispute. (ECF No. 206). He sought to have an adverse

inference issued against Defendants based on their failure to disclose Plaintiff's

complete grievance file, and to compel Defendants to allow Plaintiff to personally view

a floor plan for Downstate Correctional Facility (DCF), a now-decommissioned facility

where he was previously incarcerated. (*Id.*). After Defendants responded, the

requirement for a pre-motion conference was waived and the parties were directed to

provide additional briefs. (ECF No. 213).[1] For the reasons below, the motion is

**GRANTED in part and DENIED in part**.

---

[1] In his reply papers (ECF No. 225), Plaintiff withdrew his request for an adverse inference after Defendants stated in their opposition papers that the four pages they previously produced to Plaintiff constituted the entire grievance file regarding his incident in 2014 and provided an affidavit from a knowledgeable witness who averred as much. (ECF Nos. 222; 223-2). Thus, the portion of Plaintiff's motion seeking an adverse inference is denied as moot, and the only issue left to resolve is Plaintiff's request to review the DCF floor plans personally.

## DISCUSSION

Plaintiff argues that he should be allowed to personally view the floor plans, which were previously produced to his attorneys as confidential and attorneys' eyes only under the confidentiality order (ECF No. 182), because they are relevant to a critical issue here. (ECF No. 219 at 15–16). According to him, he needs to review the physical layout of DCF with his attorneys to "refresh his recollection" about the sequence of events on the date of the incident (which happened over ten years ago when he was incarcerated) and demonstrate that his First Amendment rights were violated. (*Id.*).

Defendants argue in opposition that the floor plans are protected from disclosure under the law enforcement privilege. (ECF No. 222 at 18–23). They also argue that even limited review by Plaintiff, formerly incarcerated in 2014, would pose a threat to institutional safety and security, given alleged similarities between DCF's layout and the layouts of other facilities currently in operation. (*Id.* at 18–19). The Court is not persuaded.

The law enforcement privilege is a qualified privilege recognized under federal law serving to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 483–84 (2d Cir. 1988); *see Powell v. United States*, 2022 WL 2188167, at *2 (S.D.N.Y. June 17, 2022). The central focus of the privilege "is to

protect information relating to investigations," *Morrissey v. City of New York*, 171

F.R.D. 85, 90 (S.D.N.Y. 1997) (emphasis omitted), including "the privacy of police

officers involved in an investigation[,] . . . not the privacy of police officers generally."

*Id.*

When a party contends that documents are protected by the law enforcement

privilege, the threshold inquiry is whether the privilege even applies to the documents

at issue. *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010). The party asserting

the privilege bears the burden to demonstrate that the disputed documents contain

information that the privilege "is intended to protect." *Id.* And "[a]ny invocation of the

law enforcement privilege must accordingly be accompanied by a specification as to

what investigations may be jeopardized by the production of [the] requested

documents." *Fountain v. City of New York*, 2004 WL 941242, at *4 (S.D.N.Y. May 3,

2004).

Here, Defendants offer only generalized assertions of harm, without identifying

a specific security threat or investigative technique, or institutional vulnerability that

would be compromised by Plaintiff's proposed limited review of the floor plans with his

counsel. Courts in this Circuit routinely require more than conclusory statements to

sustain the invocation of this privilege. *See MacNamara v. City of New York*, 249

F.R.D. 70, 79 (S.D.N.Y. 2008) (stating party asserting privilege "must do more than

alert the court to the relevant privilege or the generalized policies which support it"

(internal quotation marks, brackets, and citations omitted)); *White v. City of Mount*

*Vernon*, 2022 WL 16578086, at *3 (S.D.N.Y. Nov. 1, 2022) (noting that defendants may

not discharge burden "by mere conclusory or ipse dixit assertions" (internal quotation

marks, emphasis, and citations omitted)); *Powell*, 2022 WL 2188167, at \*2 (explaining

"bare bones recital" of privilege was insufficient to find privilege applied).

Defendants' position essentially argues that all correctional facility floor plans

are privileged and must be protected from disclosure, because of the generalized threat

to institutional safety and security if disclosed. But no case from this District has

concluded that the law enforcement privilege applies per se to all such floor plans, and

Defendants cite no binding authority to support that proposition. Their only support

comes in the form of persuasive authority from cases outside this jurisdiction that are

distinguishable in two important ways. First, in both cases cited by Defendants, the

plaintiffs were pro se and still incarcerated at the same facility for which they sought

floor plans. *See Adams v. Taylor*, 2023 WL 7390042, at \*8 (W.D.N.Y. May 26, 2023);

*Allen v. Eckard*, 2019 WL 1099001, at \*3 (M.D. Pa. Mar. 8, 2019). That presents

drastically different security concerns compared to this case, in which plaintiff is

represented by counsel and no longer incarcerated at DCF (and hasn't been for several

years now). (ECF No. 219 at 15–16). And DCF is currently not in operation (and hasn't

been since 2022) and appears unlikely to restart operations. (ECF No. 217-7, 8).

Second, although the courts in *Adams* and *Allen* protected the floor plans from being

disclosed, their analysis never discussed the applicability of the law enforcement

privilege in reaching their conclusions. Thus, this Court does not believe the facts of

this case warrant blanket application of the law enforcement privilege to all

correctional facility floor plans, no matter the circumstances.

4

Also, the manner of disclosure proposed by Plaintiff, a personal review of the floor plans in the presence of his counsel, is narrowly tailored and includes significant safeguards, which will be further strengthened by the Court. As proposed by Plaintiff, he will not retain any copies of the floor plans; he will only view them with counsel for the limited purpose of identifying the path he followed from his cell to the religious celebration and the path he followed to return to his cell afterward. The floor plans will also otherwise remain "Confidential Material" and "Attorney's Eyes Only," and thus not subject to public disclosure. To bolster these protections, the Court will further order that any review of the floor plans must be done in person with Plaintiff and his counsel (not by remote means). Plaintiff may not retain any copies or take any notes about the floor plans (other than those he provides to his counsel), and he must separately agree to be bound by the parties' protective order (ECF No. 182) and not discuss or convey any information about the floor plans to anyone other than his counsel. These limitations substantially reduce the risk of misuse or broader disclosure and further undermine the rationale for disallowing Plaintiff to review the documents at all.

This Court acknowledges that the law enforcement privilege may apply to correctional facility floor plans under different circumstances, particularly those where an active facility is involved, the plaintiff is currently incarcerated and appearing pro se, or a specific risk of concrete harm is identified. But based on the facts and circumstances presented here, Defendants fail to meet their burden to show that the privilege applies.

Thus, the floor plans previously produced by Defendants will remain subject to the confidential-attorneys' eyes only designation, but with the limited caveat that Plaintiff's counsel may review the documents with Plaintiff in accordance with this Order. Within 21 days of the date of entry of this Order, the parties are directed to submit a joint status letter to the Court confirming whether all discovery is complete.

## CONCLUSION

For the above reasons, the portion of Plaintiff's motion seeking an adverse inference against Defendants is **DENIED** as moot, and the portion of the motion seeking to compel Defendants to allow Plaintiff to personally review the DCF floor plans is **GRANTED** with the limitations outlined above.

**SO ORDERED.**

DATED:     White Plains, New York
           5/29/2025

_____
VICTORIA REZNIK
United States Magistrate Judge